UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JAMES JACOB JONES**<br>    **LA. DOC #126632**<br>**VS.** | **CIVIL ACTION NO. 3:11-cv-1321**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **TARVORES MONTGOMERY, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff James Jacob Jones, proceeding *in forma pauperis*, filed the instant civil rights complaint on July 11, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Morehouse Parish Detention Center, Collinston, Louisiana, and he complains that excessive force was used against him by prison guards and that he was thereafter denied appropriate medical care for his injuries when he was incarcerated at the Morehouse Parish Jail. He sued Sgt. Tarvores Montgomery, Deputy Joseph Sullivan, and Warden Billy Harrison, asking that criminal charges be filed against defendants Montgomery, Sullivan, and Harrison and money damages for mental anguish and pain and suffering from each defendant.[1]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that plaintiff's excessive force complaint be **STAYED** pending the outcome of the on-going criminal prosecution in the Fourth Judicial District Court, Morehouse

---

[1] In his original complaint plaintiff named Dy. Heckford as a defendant; however, in his amended complaint he acknowledged that Heckford was a witness and not a participant in the matter before the court. [Doc. 8]

Parish, and that the complaint, insofar as it alleges the denial of prompt and appropriate medical care be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

On July 11, 2011, plaintiff submitted a hand-written "affidavit" recounting the events of April 9, 2011, and requesting that criminal charges be filed against various corrections officers at the MPDC. [Doc. 1]  According to the affidavit, on that date, one of plaintiff's fellow inmates accused plaintiff of slamming the phone. The accusation was made to Dy. Heckford who then exited the dorm and returned with Dy. Sullivan. Sullivan advised plaintiff to pack his belongings and as he was doing so, Sullivan approached plaintiff from behind and applied a "choke hold." Plaintiff struggled with Sullivan in an attempt to extricate himself from the choke hold; Sullivan summoned assistance, and  shift supervisor Tavores Montgomery responded and struck plaintiff with his hand-held radio.  Plaintiff lost consciousness. Some of plaintiff's fellow inmates advised plaintiff that Montgomery and Sullivan continued to beat him and then dragged him out of the dorm and placed him in a holding cell. According to plaintiff, when he regained consciousness, he was "very sore" and swollen and he sustained injuries to his back and teeth.

Plaintiff was sent to a dentist on April 26, 2011, but he refused treatment and insisted upon seeing a "regular" doctor to get x-rays to determine if he sustained any other injuries. Plaintiff was given an analgesic gel for his pain and, he was seen by a physician.  As he was being examined, Warden Harrison advised the physician that plaintiff slapped a corrections officer and he forbade the physician from sending plaintiff to the hospital "to be checked by a professional unaffiliated with Morehouse Parish Jail..."

Plaintiff was ultimately charged with battery on a corrections facility employee and arraigned.

In his original pleading, plaintiff asked that Sullivan be charged with "assault [and] battery," that Montgomery be charged with "aggravated assault and battery" and "cruel and unusual punishment," and that Warden Harrison be charged with "intimidating impeding or injurying [sic] a witness and "compounding a felony."

Plaintiff was directed to amend his complaint and to use the form provided to prisoners for filing civil rights complaints pursuant to 42 U.S.C. §1983. [Doc. 3] On August 4, 2011, he submitted an amended complaint on the proper form, alleging facts similar to those set out in his original pleading. He added a prayer for money damages. [Doc. 4]

Thereafter, he was ordered to amend his complaint again to provide more specific facts to support his claims. [Doc. 7] On September 15, 2011, he complied with the order and submitted an amended complaint with exhibits. [Doc. 8]

In this second amended complaint plaintiff again complained that Sullivan choked plaintiff and used unnecessary force while plaintiff was unconscious. He claimed that Montgomery struck him with a hand-held radio and knocked plaintiff unconscious. He claimed that as a result of the complained of action, one of his teeth was knocked out, another was loosened and his back and mouth were "sore." Plaintiff was seen by a nurse and a physician at the facility and given a topical analgesic called "Biofreeze" and was prescribed the medication Flexeril.[2] He complained again, however, that he was "never taken to the hospital to be check by professional unaffiliated with Morehouse Parish Sheriff Dept like x-rays."

---

[2] Flexeril or cyclobenzaprine, is a muscle relaxant, which is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Medline Plus, Drugs & Supplements. http://www.nlm.nih.gov/medlineplus/druginformation.html

Plaintiff also provided a copy of the Bill of Information filed in the Fourth Judicial District Court and charging plaintiff with battery of a correctional facility employee on April 9, 2011. [Doc. 8, p. 3] He also provided a copy of the Complaint Report of Sgt. Tyree Rowden which indicated that on the date in question, Officer Sullivan and Heckford advised that plaintiff was causing a disturbance in Dorm 3; he was approached by Officer Sullivan who advised plaintiff to "roll up his belongings"; however, plaintiff refused two commands and then started cursing the officer; Sullivan then grabbed plaintiff by the shirt to physically remove him from the dorm; plaintiff broke free from the officer's grip and struck the officer in the face with his closed fist. Plaintiff advised the investigating officer that while he was complying with Sullivan's directive to "roll up" his belongings, Sullivan applied a choke hold. [Doc. 8, p. 4] Plaintiff also provided an Affidavit of Probable Cause executed by Sgt. Rowden which set forth the same facts as were stated in the Complaint Report. This affidavit was presented to a Judge of the Fourth Judicial District Court who found probable cause to charge petitioner with the offense of battery on an officer. [Doc. 8, p. 5]

According to plaintiff, the charge remains pending and is fixed for trial for December 5, 2011.

*Law and Analysis*

*1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915 and 1915A, and 42 U.S.C. §

1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

## 2. Heck/Wallace v. Kato Considerations

Plaintiff has been charged with battery on a correctional facility employee, a violation of La. R.S.14:34.5 which provides, "Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty." Plaintiff was arraigned on that charge and his trial is scheduled to take place in December. If plaintiff is ultimately convicted of the offense, he may not be entitled to seek compensatory damages for his excessive force claim until such time as the conviction in question has been declared invalid. See *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which held:

> ... in order to recover damages for allegedly unconstitutional ... imprisonment or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a

federal court's issuance of writ of *habeas corpus*, 28 U.S.C. § 2254...

Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, at 486-487.

*Heck* prohibits the use of § 1983 complaints as a means of collaterally attacking outstanding state convictions. Further, an excessive-force claim may be barred by *Heck* if it would imply the invalidity of a conviction for battery on an officer. *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) (Because self-defense is a justification defense to the crime of battery of an officer, plaintiff's claim that officers used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.)

On the other hand, since the criminal prosecution remains pending, *Heck* does not yet apply. *See Wallace v. Kato*, 549 U.S. 384 (2007) (The *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges.) However, federal courts have been authorized to stay civil rights claims attacking the legality of a detainee's arrest, prosecution, and detention until such time as the allegedly improper state prosecution has been concluded. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false arrest claim before he has been convicted (<u>or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial</u>), it is within the power of the district court ... to stay the civil

6

action until the criminal case ... is ended.")

Thus, in accordance with the principals announced in *Heck v. Humphrey, Hudson v. Hughes,* and *Wallace v. Kato,* plaintiff's excessive force claim – to the extent that plaintiff seeks compensatory damages – must be stayed pending the results of the on-going criminal prosecution.

Of course, to the extent that plaintiff seeks to have the defendants criminally prosecuted, he has failed to state a claim for which relief may be granted since decisions whether to prosecute or file criminal charges against an individual lie within the prosecutor's discretion, and private citizens do not have a constitutional right to have an individual criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

### 3. Medical Care

Plaintiff was a convict at the time the complained of events occurred. The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of

deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the decisions of the health care professionals who observed him while he was incarcerated at the Morehouse Parish Detention Center. By his own admission, plaintiff was examined by a nurse and a physician at the facility. He was given a topical analgesic and a prescribed muscle relaxant. He complains that he should have been afforded a second opinion and that he should have had additional diagnostic tests performed; however, these complaints merely echo his disagreement with the diagnosis and course of treatment deemed appropriate by the prison's medical staff. Plaintiff's disagreement with their diagnosis falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff

must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed,</u> <u>and that they drew that inference</u>. *Id.* at 837.

Plaintiff described his injuries – the loss of one tooth, the loosening of another, and a sore back –; however, he cannot establish that the defendants were deliberately indifferent – that is, that they were aware that he faced a substantial risk of serious harm. In short, with regard to his medical care claims, plaintiff has failed to state a claim for which relief may be granted. Nevertheless, a formal recommendation will not be made at this time since the undersigned has recommended a stay of the proceedings pending the outcome of plaintiff's criminal prosecution.

## RECOMMENDATION

Based on the foregoing

**IT IS RECOMMENDED** plaintiff's complaint be **STAYED** under the following conditions:

> **a. If plaintiff intends to proceed with his claims, within thirty (30) days of the date the criminal proceedings against him have concluded he must file a motion asking the court to lift the stay.**
>
> **b. If the stay is lifted and the court finds plaintiff's claims would impugn the validity of a criminal conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed at that time, absent some other bar to suit. See *Wallace*, 127 S.Ct. at 1098.**
>
> **c. In light of the stay, plaintiff should not file any more documents in the excessive force action until the state court proceedings have concluded.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, October 25, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE